1453-55 Lydia P. Conner v. US Dept of the Army et al. Oral argument not to exceed 15 minutes per side. Mr. Shepard for the Plaintiff's Appellant. May it please the Court, Counselor. This case involves the denial of our case in Judge Russell's court based on his reading of the statute of limitations to file this federal court. I am Dennis Shepard and I represent Lyda Conner in this case. Lyda Conner is 86 years old and would have been here, but she suffered a mild stroke recently and is recovering. My co-counsel is the Honorable Thomas Todd. He's a private attorney acting in a pro bono capacity. All of the people who are associated with our side of the case are in a volunteer capacity. I was in a pro bono capacity, but because I'm in the Kentucky Department of Veterans Affairs, my former boss, Commissioner Ken Lucas, and my current boss, Commissioner Heather French Henry, have allowed me to use my official capacity, in this case an official time, to fight this cause. Our main objective here is just to get a hearing. The main objective of our case is to go before the Army Board for Correctional Military Records and have a three-member panel spend probably less than an hour reviewing three eyewitness accounts of the heroism of Garland Murrell Conner of Clinton County, Kentucky. We believe that if they do that, they will make a recommendation that the Distinguished Service Cross that he received from World War II for that heroic action on January 24, 1945, will be recommended to the President and to Congress to be upgraded to the Medal of Honor. All we are asking for is that hearing. It's a very sympathetic case from your standpoint and from the Army's standpoint, I would think, so we want to hear you out and find out what this court can do legally. In 1999 and 2000, Lyda Conner, with virtually no evidence, simply a letter from Mr. Chilton from Wisconsin, and in the second case for reconsideration in 2000, virtually no evidence, received two board hearings, received votes from the three-member panel. Didn't you have the Ramsey evidence by then? Your Honor? Didn't you have the Ramsey evidence by then? No, we did not. Now, I think you're talking about General Ramsey. General Ramsey was then Lieutenant Colonel Ramsey at the time of World War II on January 24. He was Garland Conner's direct battalion commander. Over the years, General Ramsey has said, and I think we put it in our brief in a number of ways, that he made a mistake. So just a quick answer. None of that, the mistake stuff, was in front of the board in 1999 and 2000? It was not. It was not. It came later, and as a matter of fact, I focus my argument today on the application made in 2007. Why do I focus it on 2007? Well, because Judge Russell said that the statute of limitations for bringing this case to the federal court system expired in 2006. Well, that error doesn't take into account, as you're suggesting, new evidence, and that new evidence is the three eyewitness accounts of his error. But those statute of limitations don't work very well if all you do is you just keep filing a new affidavit, right? I mean, you have to understand that. I do understand that, but what I'm saying is it took literally years of Lyda Conner and the people who were helping her to discover this evidence, because as we state in our brief, Garland Conner's military records were destroyed completely in the 1973 St. Louis Military Personnel Center file. So it took years, and eventually a staff member from Congressman Whitfield, working through the National Archives records, found these three eyewitness accounts. General Ramsey, as you're alluding to, didn't even know they existed, and I think it's very clear in our brief that General Ramsey, then Lieutenant Colonel Ramsey, had some shrapnel wounds on the day after the heroism we're talking about, on January 25th. He couldn't oversee the package that went forward. So as you see in their brief and in ours, he just thought it was the most expedient thing, let it go because it's going to get the highest award possible before this man musters out after he served 20 years. So if you get this hearing with the new evidence, tell us exactly what it is. Is it any more about live witnesses, or is it all paper record stuff at this point? I'm just curious. It's both, Judge. Okay, so who are the live witnesses? General Ramsey's 96 years old. He lives in Virginia, and he is still today willing to testify that he made an error. Okay, so keep going, because I think we understand that angle. That's, I think, the most compelling thing you have going. What else do you have? Judge Sutton, to answer your question, would you give me a couple of minutes to read one of the eyewitness accounts? I think we have a sense for the heroism. You can use your time however you want, but I'm suggesting to you that's not the most efficient way to do it. Just tell us the key things. In 2007, a complete package was submitted to the Army Board for Correctional and Military Records, and attached to that package... So Ramsey would be the only eyewitness, is he? He's the only live witness. Okay, so then the rest of it is keep going. The one eyewitness account is by a private first class dutil. He's still alive. He lives in California. He's potentially a live witness, and he's willing. We've contacted him recently. How old is he again? He's in his 90s. He'd have to be past 90 if he's in World War II. Yes, yes. And that's a little bit of a problem that we've had. I mean, these things are aging out, and we wanted to get General Ramsey before the board years ago. Can I make a suggestion to you? I mean, I know you're doing this for free, but it's God's work. Keep doing it. I would film these guys. Have you already done this? Have you already had interviews with a camera? Video tape. Video tape. There's nothing preventing you from doing this to capture it now, because I think it's really risky. And just to... You haven't done that yet. Just a suggestion. I have not done that yet, and I'll take that under consideration. Okay. And we will try to do that, but the actual eyewitness accounts are so compelling. They're subscribed and sworn to 16 days after the action, and all three of these people in the sworn affidavits witnessed the heroic action. What we're trying to focus you in on is not whether this was a heroic action. I don't think anybody doubts that at all. The question is, if you're complaining about what happened in 1999 and 2000, it seems to me inescapably you lose under the statute of limitations. And as I understand it, in order to do so, you've got to rely on the Army regulation that permits you to come back again with new evidence. Yes. Right? And if I could just elucidate a little bit by... So every time you refer us back to 1999 and 2000, this gets muddled. I understand that, but if I could just read the application, the standard form application that Lyda Conner filed in 2007, Section 8, Discovery of Alleged Error or Injustice. If more than three years since the alleged error or injustice was discovered, state why the board should find it in the interest of justice to consider it. And then she fills out a full paragraph referencing the attached three eyewitness statements. So your argument is the regulations permit what in this case would be, I'll call it an exception for lack of a better word, to the statute of limitations or a tolling of the statute of limitations. Army Regulation 15185, Chapter 2, Section 2-4, Time Limits. The board may excuse untimely filing in the interest of justice. This regulation is permeated with interest of justice. It is a standard beyond a normal statute of limitation. But if that is completely discretionary on the part of the Army, what is our role to come in? I assume we can't second-guess that exercise of discretion unless it was done arbitrarily and capriciously. Which I think it was, because that application received a number of letters from the staff director, Conrad Meyer. One of them is the February 5, 2009 letter that I pegged the statute of limitations on. And it, in very clear, plain language to Ms. Connor, who then did not have an attorney, says, this is your final action. That's why we think the statute of limitation has not run, that the judge did err on this. As a matter of fact, if you look at this letter... Okay, so let's just assume you get over the statute of limitations. Let's deal with that issue for a second. And let's focus on that letter. I mean, at that point, they say at this point, they've reached this after complete review of everything is what they seem to be saying, okay? Which is a Lipsman violation. There's no board member saying that. That's the staff member, staff director saying that. They've reviewed the evidence for substantiveness and decided it's not good enough. I thought they changed the regulation in 2005 to account for Lipsman. They changed the regulation, actually, May 1, 2006, I believe it was, because Lipsman said staff members may not... I got it. Well, the thing I'm not understanding is this is an 09 letter, and the regs have been changed to comply with Lipsman. You're saying this violated the new reg? Absolutely. Because they're saying in there they've reviewed the eyewitness statements, they've considered the testimony of General Ramsey, and it's signed by Conrad Meyer. There is no vote in there. There is no cover letter to a board member saying that, and it's only the duties of the board member that can make those decisions. You're saying that's from a staff member, no indication that the board ever looked at it. None at all. But, I mean, it just says then the case will be returned without action, and the applicant will be advised the next remedy is appealed to a court of appropriate jurisdiction. I mean, you can't have it both ways, right? Because you're taking this letter as allowing you to go to court. As the peg or the starting point for the statute of limitations. It's the final letter from Conrad Meyer telling Lyda Conner, you're out of luck here, you can't file anymore. So six years from there would be February of next year. So you have no problem with this? If you take the sentence, the decision is reached after a complete review, it doesn't say who's doing the reviewing, right? I mean, remember, he can just be the correspondent, it doesn't tell you who's doing the reviewing. Judge, if you go back to the 1999 and 2000 decisions, where there was virtually no evidence, there was a cover letter attached to the board member's decisions. This is simply from a staff member. Okay, well, I'm really just trying to understand the positions here and what to do about them. You take the sentence, this decision is reached. If you take that sentence out of the letter, okay, let's just do that for a second. Not in my mind. Then what we have is something where you can go to court and you have a denial of reconsideration. I mean, what's odd to me is that you want us to not have that letter. The question I was going to try to ask you until you cut me off and I think undermine the question I'm now about to ask was, if everything goes your way, you get rid of the statute of limitations, isn't what you really want us to do is say, listen, there's an awful lot of very good evidence. Wasn't it arbitrary and capricious of them not to grant a full hearing given this evidence? It's the 09 event that we're reviewing. If I get rid of every single procedural roadblock that's been thrown in front of you, isn't that the best that can happen? Isn't that what you really want? If I can ask them to strike that part that undermined what you were saying, I apologize for that because what you just said is the order that we're looking for from this court. That's exactly what we're looking for. But you actually want the letter to say it was reviewed because that's the thing that – I mean, I don't understand how you think you can get anywhere here without a court saying, given all of this compelling evidence, you need to have a full-blown hearing and that's the arbitrary and capricious act, not allowing it. What am I missing? I mean, you can't possibly think we can overrule the board on the merits, so I don't understand what else there is we could do. I'm having trouble understanding what they reviewed, and that letter doesn't tell me the board members. Maybe forget everything I think. What is it, the very best thing you could ask us to do that's within the range of reason? In the realm of the statute of limitations, pegging that statute of limitations to this date, February 5th, 2009, or in the realm of equity saying – Okay, fine. We're done. Next. Now what do you want? This court has decided that the Army Board for Correctional and Military Records has acted arbitrarily and capriciously in denying a full hearing in this case. Denying the review by the board. Yes. That's what you want. Which is exactly what you said, Judge. You're not asking us to take action for him just to open the door so he can go back to the board. That's exactly what we want. But it's a little more complicated than that, isn't it? Because you can't tell from here really who looked at this stuff. They say they looked at everything, including the new evidence. If that was only done by the staff, then you want board members to look at it under lip service. Exactly. But that may be without a hearing. If the board members did look at it to see if it was sufficient for a hearing, then you want us to say in the alternative that that was arbitrary and capricious and they get a full hearing. Yes. Now, if we're in that second realm there, how do we determine on this record, once they say they actually did look at all of this evidence, considered everything, even though they've maintained all along they didn't have to do that because of the statute of limitations, why was that arbitrary and capricious? It was arbitrary and capricious because Army Regulation 15-185 throughout gives them a standard called the interest of justice. And when you get newly discovered evidence, I would think that's... You're back to the statute of limitations point, aren't you? I'm back to the standard of injustice, preventing an injustice. But my question is perhaps arguably a little more subtle than that. We're in the second category where the board did look at this, whether they were required to or not. They said, we've looked at it and you lose. So what says from our perspective that the interest of justice in this case suggests that they should have gone further, given that if for no... This is the first case that I've ever had of this type. I didn't even know this board existed. So I wouldn't have any idea whether there's one other similarly situated veteran or thousands of similarly situated veterans to say... To measure the heroism of this individual, which is indisputed, against the heroism of people that have been in World War II, Vietnam, Afghanistan, Iraq, all these other disputes. So how can we say in the bigger picture this is or is not an injustice? I would say that it comes from the compelling nature of each eyewitness account. And it comes from the very purpose of the board. This is called the Army Board for Correction of Military Records. Who better can correct this record than the commander who said, I made a mistake? There's so much administrative discretion about how you process these things. I mean, there are not a lot of cases out there where Article III courts are telling agencies to have hearings as opposed to review the evidence the way they want to review the evidence. I mean, just... I mean, do you have a case where... I mean, just... I don't... It just doesn't happen. This is the first case of its type that I've been associated with. And, you know, I'm a prior JAG myself. I dealt with military regulations on a day-to-day basis. This regulation screams out that they should have given consideration to the evidence, and they did not. Does it make any difference in connection with that question whether they did or did not explain why this new evidence doesn't meet whatever threshold it has to meet? I think it does. But that's a tricky one, too, because there's always the question about how far does an agency have to go in explaining their rationale. And I don't know what the cases would say about this particular threshold decision by this particular Army board. So what's your position there? Do they have... Is the problem here they didn't tell us why? Are you arguing they did have a duty to give you more explanation, or aren't you arguing that? I'm really not arguing that. I'm arguing that they should have given due consideration to the three eyewitness statements. But they said they did. Well, the director, who is a staff member, said that he did. He didn't imbue this to any... I think we should hear from the government, and we'll give you full rebuttal and maybe more. But, boy, I'm rereading it, and he talks about what the board has done many times. They've responded many times. That's all permissible. And then that first sentence invokes the new rule. It's not new evidence and does not warrant granting exception. And then when they say this decision is reached after complete review, it's doing the complete review of whether it's new evidence. So I just don't know about that. But, anyway, think about that. You're going to get full rebuttal and more. Let's hear from the government and see if we can figure this out. May it please the Court, I'm Candace Hill. I'm arguing here today on behalf of the United States Army. This is a difficult case. This is a sympathetic, honorable, valorous person. The question that has been raised is whether his camp has waited too long to file a lawsuit in federal court. Let me give you a statute of limitations way of thinking about this, and I'm just curious your answer to it. Lipsman comes out in 04. The Army does not have to concede it's right. They can appeal it. They accept it as right. How do we know that? Because they changed their regulation to honor it. So I just don't understand how the statute of limitations periods don't start anew for people that have been engaged in this process pre-Lipsman. It seems to me the Army has made a confession of error on how they were doing this, and so it all starts anew, and that, to me, seems like there's a lot of risk here of reaching out. That one doesn't seem like it's reaching out too much. And I have thought of all the ways that there might be arguably a statute of limitations. That's not even equity. It's not equity. It's a new regime, and why in the world wouldn't you start the six-year period after the new regime? Or, as the Lipsman plaintiff did, and when the Lipsman decision came out, put all who might be interested on notice of the flaw that Lipsman identified in the previous procedure. And I made that concession in my brief that if the statute of limitations didn't accrue in 2000 when Mr. Connor's first request for reconsideration was denied, then it accrued when he knew or should have known or his people knew or should have known that the original procedure was flawed because he was, in fact, subject to that original procedure. So are you making the point that it runs from 04? Is that the point you're making? I don't agree with that because 04 is when you lose. It's not when you confess error and throw up the white flag. That's when you do the new regulation, which the new regulation is 06, right? The new regulation was implemented and became effective March 31st of 06. If you ask me, 06 is as if Lipsman was appealed to the U.S. Supreme Court and you finally lost in 06. That's the way I look at this because you didn't appeal to the D.C. Circuit. You confessed error. No way no one would know that because this is all internal Army board discussions. And how do we know you confessed error? Because we see the new regulation in 06. And I think there's a plausible argument. Okay. So let's say the statute, for the sake of argument, let's just say the statute of limitations is gone. So one idea is, oh, that was the ground of district court decision. We'll now ask for APA review. But that just seems absolutely ridiculous given the way this is all playing out. It looks like the wife is going to die soon. The witnesses are going to die soon. I just, it absolutely blows me away. Let's put it this way. Obviously, Connor could have, he had all kinds of procedural technical rights to exercise in 1945. Keep himself safe. Go home. He doesn't exercise a single one. In fact, if anything, he violates the rules to fight for the country. Now it's the Army insisting on, you know, incredibly technical arguments instead of just saying, you know what, let's just do the hearing. He may not get it. It's very hard. There are thousands of these applications. I don't understand. Why not just do the hearing and be done with it? Well, and that's why this case is difficult because the Army complied with the regulatory scheme that was in place. And, again, we go back to the two. That begs the question. That begs the question because we just decided the statute of limitations for the sake of argument is off the table. I will note, I recall in Lipsman, the specific people who filed suit in Lipsman, the district court judge who ruled that that process was incorrect, he specifically directed the folks who were the plaintiffs in that action to seek relief from the Army Board for Correction of Military Records. And that was a specific directive that he said those people who brought this lawsuit are hereby authorized to go back to the board. So at least the judge who wrote Lipsman recognized that there was a group of people, specifically the plaintiffs in Lipsman, who could go back and rectify the error or have the board rectify the procedure error that was followed in their case. You know, again, that's my point, that that's certainly a flag to anyone who thinks that they were wronged by any decision by the board. You're making a statute of limitations argument, right? I really appreciate what you're doing. You can do that. I'm not saying don't do it. But in the course of answering the question in front of you, I'd be really grateful if you assume you're wrong about that, maybe incorrectly, but just assume that and try to figure out if that's true, what do we do with this case that doesn't say it's going to take another 10 years? I fear that there is no remedy that can be... So the last time the board, as opposed to staff, looked at this would be 2000? Or no, 1999? The last time the board looked at this was twice, in 1999 and 2000. So is it fair to say he's right about all of this other evidence is post-2000 and so far the board really hasn't looked at that? First of all, Lloyd Ramsey's statements were in place to the board in 1999 and 2000. When he said that, I marked it, and I specifically noted that the board said in its 2000 denial of the request for recommendation that the commanding officer, I guess it was the battalion commander who was Ramsey. Okay, so we'll figure that out. How about the other eyewitness? The other eyewitnesses apparently there are affidavits. They were never presented to the board and allegedly not discovered. I don't know any more than that. They were presented in 2007, and that's an important thing because by 2007 the Army Board for Correction of Military Records was bound by a new set of regulations, and that new set of regulations said that if a request for reconsideration was made after a previous request for reconsideration, which was what the position Mr. Conner's people were in, it would not be considered at all and would be returned without action. And Mr. Conner, or Mr. Conner's people again, we'll refer to him as Lieutenant Conner's people, they were on notice of the fact that there was no action that could be taken in his case. How can you say that when in 2009 the Army says file a lawsuit? Well, because there's another letter. What's the point of filing a lawsuit? That is part of the directive of the Lipsman change, apparently to make it crystal clear to anybody who gets a decision from the Board of Corrections that that decision is final and their remedy is to file a lawsuit. Of course, that's already the law before that was ever put into it because any final decision by an agency is subject to review under the Administrative Procedures Act if it is final. But apparently the Lipsman decision and the changes from the Lipsman decision made it mandatory that the Army personnel who are communicating with the claimants in this case be told that. So he was told that, but of course it was probably already too late by then. But there's one very important letter that I want to cite because the reference to this February 25, 2009 letter being the thing that triggered the statute of limitations, let's go back to a September 23, 2008 letter. This was the first letter that the Conner people got in response to those 2000 submissions. And it specifically cites to the then current post-2006 regulation, and it says an applicant may request reconsideration of an earlier board decision if it has not previously been reconsidered. So this September 23 letter makes it clear that there is no longer an opportunity for reconsideration a second time. I agree that your case would be a lot stronger if the last communication was the September 23 letter. The regulation says you only get one shot at reconsideration. You had it, so we're not even going to look at this stuff. We're sending it back. That's what the letter says. Then five months later, there's another letter that says, we've made a complete review of the eyewitness statements, prior decisions, letters, and evidence submitted by you. So there seems to be two very inconsistent responses from the Army here. So what do we do? What is the significance or lack thereof in your mind with these two very inconsistent responses? There's a series of letters, Your Honor, and that last letter is the final in a series of letters. And I would argue to the court, I don't even argue. I'm certain that it's an effort to be responsive to the repeated communiques from the Connor folks who keep trying and trying to have this hearing. Are these other letters between the two in the record? Yes, and I'll cite the court to them. They're cited in my brief. Just before you go there, because I think this is still responsive to Judge McKeek's question, what do you think the sentence in the February 09 letter means, this decision is reached after a complete review? I think it's an attempt to be gracious to say we've looked and looked and looked and looked at this. You're done. The we being the board or the we being the staff members? I'd have to say it's the staff members. I'd have to say that it's Mr. Avery who was the chief of the case. Why isn't that an ellipsesman violation? Why isn't that inconsistent with the fact? Well, again, you have to put it in context. When the first letter that was sent to him at his request specifically said, to be blunt, you're finished, you're done, the decision in 1999 and 2000 was the final decision, we will not consider this. Then there are a series of letters, again, from Walter Haddix, from Pauline Connor. So they're going beyond their authority because they're being nice and they want to be gracious. How about going beyond their authority and being nice and gracious by having a hearing? And I can't speak for the Army and say they should have a hearing, but I can say that these letters can't stop the Army from abiding by the regulatory scheme that's in place, which is the statute, the regulations say that once you've had that first request for reconsideration, you're done, which is where this series of letters began. And again, the efforts of the Army to try and be responsive to the statements or the requests or the letters and correspondence that were sent after that, I agree that letter is troublesome. I read it and thought, why did you even say that? Because it does smack of some staff review that's improper, but it has to be taken in context that he had been told repeatedly, this is done, this is over, the regulatory scheme doesn't allow for reconsideration. So I agree that the series of letters in an effort to be responsive to Mr. Conner have to be taken in context. And that last of the series of letters seems to say we've done staff review, but it certainly isn't the case because that wasn't the regulatory scheme. What are your own rules for having a hearing? What are the, pardon me? What are your own rules for when it's appropriate to have a hearing for this kind of request? The board may decide whether a hearing is appropriate if it determines that an actual hearing is necessary to resolve the question. But I mean, what does that really mean? Does it mean like, is that another way of saying whether live witnesses are appropriate? That if it's a paper record case, they never have a hearing? I know it's specifically addressed in the statute, Your Honor, and I know it says that it's up to the board to decide whether to have a hearing. I don't recall from my own review of the statute. Did the Dine request ask for a hearing? I'm not certain that it did ask for a hearing, Your Honor. I'm not certain that it did. I'd have to go back and review that. But, of course, it likely did not because this push for a hearing is all predicated on the 2007 eyewitness affidavits. I would add this. I haven't seen those affidavits. They're not in the record. Whether they constitute new evidence or simply confirmation of the undisputed facts of Garland Conner's bravery, I don't know. In the trial court scheme, we've asked whether it's cumulative or simply corroborates that. How can it be non-arbitrary and non-capricious to make a decision about a hearing when you don't have it? In other words, why isn't it necessarily arbitrary and capricious to have rejected a hearing on reconsideration when you don't even have all the information? The initial proceedings, of course, in 1999 and 2000, if there was no hearing, it's because no one suggested that it was arbitrary and capricious not to have a hearing. But, I mean, there is a reconsideration process for new evidence, and you're making it sound like we don't need to look at this stuff to decide now. Unfortunately, under the 2006 regulation, there is no procedure for looking at new evidence. The which procedure? The 2006 procedure, the post-Lipsman procedure. Once a claimant has had one request for reconsideration, which is what Mr. Conner had, actually he had two, once the request for reconsideration has been denied, that's the end of it. Even if there were to be new evidence. No, but, I mean, why isn't this whole limitations thing, if you start the clock anew in 2006, another way of saying that what happens in 2007 is asking for reconsideration of the 1999 decision, not the 2000 denial of reconsideration. I don't understand why that, and then you look at the new reg, and the whole point is, is there new evidence not considered before? Yes. I suppose if one simply closed one's eyes to the fact that there was a reconsideration, in fact, one request for reconsideration that was denied, and a second request for reconsideration that was denied, if we just ignored that. But, I mean, you're making it sound like it would be pretty foolish, but that would all be, every single thing you're talking about is in the Lipsman era, right? Lipsman era, yes. Era, E-R-A. Post-Lipsman. I'm not sure I understand your reference to the Lipsman. I'm just making the point that you're saying the only way you could do what I just suggested is to ignore all these prior reconsideration denials, and my response to that is those are all in the Lipsman era, E-R-A. I understand. In other words, they predated Lipsman, and, therefore, they are null and void or invalid or a nullity or can be disregarded. Well, then we get to the question, and, again, the whole thing is complicated because the reference to the statutory time period that counsel referenced is in the provision of how long do you have after you discover a mistake to file your claim, and that's where that three-year period comes in. And, remember, most of these cases are in the context of I got a promotion, I didn't get my raise, I want my money from, you know, retroactive for a period of time. So if you discover a mistake and don't bring your claim for the correction of that mistake within three years, then you're barred. Now, this is, of course, 54 years later, and the question is, is there a mistake here or is it simply a judgment by now? I bet you don't know the answer to that question. I think I do, Your Honor. I believe I know it. Do you know whether this was a mistake or exercise of judgment? I believe that Colonel Ramsey made a conscious decision at the time that he came to regret upon reflection. That doesn't mean he was wrong when he made it. He just wishes he had done it differently. This is not like a mathematical error or a clerical error or papers. Because there's a battlefield situation, right? Well, certainly. He was definitely. He said get him the highest award he can get. No, he said let's get him the Distinguished Service Cross so we can send him home with a medal when he gets back to the shores of this country. Let me ask you another, if there's another way to be looking at this. Basically, your argument is we have this new 2006 regulation. It says we'll only look at, really do one reconsideration. That's already happened here, so you lose. That isn't the basis upon which the district judge decided this case. The district judge concluded that the statute of limitations began to run in the year 2000. I'm not sure whether you have fully conceded yet that it really should have been at least 2004. I think you did, didn't you? I haven't fully conceded that, sir. Okay. I recognize there's an argument to be made. So you're leaning toward, you're sympathetic to the argument that was wrong, that it probably would have been better if the decision had been made that the statute started to run in 2004. But in any event, at least this case would be timely under the statute of limitations. It may ultimately not make any difference because the district judge, once having corrected the statute of limitations, may then go on to say, and you lose anyway because of the regulation. But I guess I'm concerned. I don't know enough about this to know whether a persuasive argument can be made, once having corrected the statute of limitations issue, about how they get around the new Lipsman regulation. It seems to me the argument is the one we've been pursuing here, where you've got two inconsistent letters, and there's no explanation for why the second letter came out, and it doesn't seem to comply with the APA requirements of explaining why you did what you did. But in any event, shouldn't that be determined back by the district judge? Well, and I certainly don't think a remand is appropriate because I think the judge was right by dismissing this on the statute of limitations grounds. But if it were to be remanded. If we ask you to accept the proposition that we find that the statute of limitations didn't start to run in the year 2000, if we rule that, do you believe this is an appropriate case then for a remand, to go back and argue about the new 2006 regulation? Would you concede that? I think as a matter of law, as a de novo review, this court could certainly determine that a statute of limitations had not begun to run in 2000 and remand it for the district court to determine if it didn't begin to run in 2000, then when did it begin to run? Because I think it's for the district court judge to make that decision. And if this court were to say that the judge was wrong, that it ran in 2000, then it would be for the district court to reconsider all the information that's available and decide whether the argument they've made, which is it began to run in 2009, is plausible, or whether it began to run at some later date, later than 2000. So you're not making a harmless error or an alternative resolution argument here that says it doesn't matter, he's going to lose anyway. And that's a harsh argument to make and a difficult argument to make. So you're not making that, right? Well, I will point out the point that you made at the beginning. There is something more they want than a hearing. They want a recommendation. And the question is whether or not what the Army did is in violation of the law or arbitrary and capricious. Well, if they get a hearing, they're going to get a recommendation. They may not like it, but the result of a hearing will be a recommendation. Well, when I say they want a recommendation for the medal, yes, Your Honor, of course you're right. It may be a denial. Sometimes the answer is no. I take it mediation is not something that would advance the ball here? The District Court of Appeals did not seek mediation in this. And, of course, it's not been something that's been addressed in the district court level. I could contact the Army and discuss the possibility of whether a hearing is appropriate. I think the suggestion the court made is very wise because if there are people who have something to say and to get their deposition. We have an excellent mediator, so I think you should go ahead and talk to your client. But the question then would be what settlement would possibly come to, Your Honor, because typically mediation involves, well, let's pay a little more in damages or a little less in damages. Oh, this is beautiful. You don't have to pay a thing. So we solve that, huh? Our suggestion would be for the Army to agree to have a hearing. I should think that would be on the table. Mediated and it's no expense really to anybody. And the process of that would be before the court came to a decision on any of this. Yes. When the mediator gets involved, we don't get to hear what you guys talk about, but we delay our decisions until we've heard that you've either resolved it, in which case there's no decision, or if you don't resolve it, then everyone's fate is in our hands. I'm going to say something that's very personal to me, and I've never cried in front of a court in my life, but my father was a First Lieutenant in the 7th Infantry of the 3rd Division and fought in the Comar Pocket, and he was injured terribly on January the 25th, one day after Garland Conner had his acts of bravery. There's no one more sympathetic and more strongly in favor of giving people the honor for the bravery and valor that they had in that battle. My father was in military hospital for over 18 months with a serious wound to his leg. For all I know, Garland Conner may have been someone that helped save his life. So I feel very strongly about this as well, and I do understand that there's a very sympathetic and a very important reason to recognize and to honor the people who fought a long time ago but who still should be remembered. You seem like a perfect candidate for mediating the case and a wonderful government lawyer, so thank you. Thank you. I appreciate your argument. I don't know, Mr. Shepard, if we need to hear much more from you. I think we're going to ask the mediation office to contact both, and we'll postpone any decision until we hear how that goes and try to be reasonable, and I would definitely get those videotapes going. Thank you for your consideration of this case. All right, it's submitted. Next case.